and you're allotted time. And when it turns red, your time is up and we ask that you promptly conclude your remarks. The exception is if you're answering questions from the court, you may complete your answers. All right. Our next, our first case of the morning is number 23-10719, Monteria Nahuda Robinson v. William Sauls. Mr. Williams, I see you've reserved five minutes for rebuttal. Is that correct? Yes, Your Honor. You may begin. Good morning, Your Honors. May it please the court. My name is Mario Williams. I represent the appellant, Ms. Robinson, in this case. We are here to ask the court to reverse the lower court's decision, the procedural history on this. Your Honors well know we had already been up here one time. There was a reversal and a remand back. We thought we might get a jury trial, but then the Supreme Court came out with Egbert and the opposing counsel moved to have the case dismissed again and now we're here. Your Honor, I would like to start off by saying that, and this is a very serious case, obviously. A young man with mental illness, acknowledged mental illness even before this task force, fugitive task force went out, was shot at 100 times. 77, I think approximately 77 bullets penetrated his body. There was a lot of back and forth. We ended up getting a jury trial. Well, this court remanded the case saying, hey, look, there's some evidence that a jury could conclude excessive force was in this case based on an issue with a flash bang and gunshots heard after a flash bang went off. Now, we believe that even if we consider Egbert, this court should actually reverse. Admittedly, it's a tough case, but if we start off with the two prong test, is there a new context? Are there special factors? I would actually like to start off by assuming that there, there is a new context and move right into the special factors analysis. And then I'll go back to the new context. The special factors analysis, although not in great detail, as far as one, two, three, four, five, what you have to examine Before you get into the special factors, though, hasn't the Supreme Court in Egbert said that the newness of the new context should alone require dismissal? So if this is a new context, which you're assuming because of the differences of this case and Bivens, isn't this enough for us to affirm the district court's dismissal? Well, I read the case. Well, let me just address the new context then. But I read the case a little bit different that you still could go to the special factors. But if we just Bivens was a case about law enforcement officers acting for under a search and seizure under the fourth amendment that related to an excessive force claim. A man was manacled, claimed that it was a warrantless search, said there was excessive force and claimed a fourth amendment violation. In this situation, we have identical, this is going to come down to how your honors, how broad your honors are willing to look at this situation. Because if you look at for what it is, we have a routine search and seizure under the fourth amendment that involved the claim of excessive force. The Supreme Court said that new defendants can make it a new context. And here you have a joint task force of the U.S. Marshal Service with state and local law enforcement officials. Why isn't that a new context, particularly given the statutory mandate to set up such task force for apprehending fugitives? The reason why I believe that it's not a new context, your honor, is that what Egbert really said was meaningful differences have to be there. So if we go down the road of saying if you can point to a new defendant every time, then you're out. That just eliminates the whole issue of meaningful differences. Because if it's a task force here and a DEA here, then OK, well, that's a new context. You're out. No. Just like Honorable Justice Sotomayor said, line level, these are line level law enforcement officers. She said that in her dissent. That's true. So we're not, that's not binding us in any way. That's true, but it doesn't stop you from adopting that argument if you believe it. Well, it does if it conflicts with the majority, which is very broad and has said that you can look at whether they're different defendants, which we have a different agency here. You can look at it, but at the end of the day, we're talking about the execution of an arrest warrant, which is an everyday occurrence. Well, and that also is different. The defendants in this case had an arrest warrant for Mr. Robinson, and that was not the case in Divens. So isn't that another difference? But there have to be meaningful differences. Well, I understand, but Edward is very, very broad, and as you know, this is a very hard hill for you to climb up. It is, but they do have to be meaningful differences. I mean, if you're But how is that not meaningful? Having an arrest warrant for him? How is that not a meaningful difference? It's not meaningful because at the end of the day, you're executing a search and seizure under the Fourth Amendment. That's the bottom line. The bottom line is that you're executing a search and seizure under the Fourth Amendment in which somebody is claiming during the execution of that search and seizure, there was unlawful use of force. Well, what about another difference? Mr. Robinson engaged in a gunfight with the defendants, unlike the defendant in Divens, who was unarmed when he was subjected to excessive force. Okay, so saying that he engaged in a gunfight, which we challenged, but this court actually found that yes, that was, that's why part of the case was dismissed. I still don't believe that's meaningful enough to say if someone picks up a gun, the claim is excessive force, not no force. That's number one. So you can win an excessive force claim, just as we did, even if somebody uses force. So because there was some kind of gunfire interaction, doesn't mean that it negates an excessive force claim. So the fact that in this situation in Divens, he would sat down and felt, because really Divens is about saying excessive force happened because there was no right to be on the property, almost like the Katherine Johnston case here. That doesn't make it, that doesn't stop it from being an excessive force case in pursuit of a search and seizure under the fourth amendment. If we get down to particularizing every little detail, we're never, it's just like Gorchus said, you're never going to be able to fit this. And obviously by leaving, leaving this intact and not saying, hey, we're just going to do away with Divens. There has to be some exception. There has to be a way that these cases can be coincided enough to allow us to go forward because there's no case, everybody understands this, the 11th Circuit has made this clear, you can't separate the facts from a case. You might want to move on to the special factors. I'm mindful of your time, so I want to make sure you cover that as well. So the special factors, if there's any reason to believe Congress is better equipped to create a damage remedy, and you look at if judicial intrusion into a given field might be harmful or inappropriate, and you look at the system-wide consequences in that context of actually allowing a Divens case to go forward, the intrusion into what field? The Abbasi case, which I know very well, because I actually had to litigate it in D.C., a case that dealt with that, was executive officials. The Hernandez case deal, and this is what happened with Egbert, they said, well, we're just going to lump this in. We're going to be so broad that we're going to lump this factual pattern into border security. How do you deal with the fact that Congress created this special statutory mandate for these task forces, and yet it didn't add any kind of remedy to the statute? Well, honestly, the bottom line for me is the other issue on appeal, which is all but one of these officers was a federal agent. These other officers were employees at a local police department that were operating under the color of state law. That's our other appeal question, because these officers, all but one, couldn't even participate in this so-called Congress special task force if they didn't abide by state law. In Georgia, and I know this well because I helped change the law in this area, in Georgia, if you don't complete one hour of use of a deadly force in classroom training, and you don't complete one hour of firearms training, your certification is lost. It used to be that you just lost your specific and general powers of arrest. After a case that I had that actually came up to this court, they changed it to your certification is gone. Every officer, Doyle, Hutchison, everybody but Hines, couldn't even be a part of this task force. That's an interesting point you raise, and it makes me think of this question. The remedies that already exist, the administrative remedies, would those apply to the state officers in the task force? No. They wouldn't. Your Honor, I've got one minute, and I'm going to, by the time I'm going to wrap it up, but that's our point on our second point of appeal, our questions presented. The lower court erred in this area. He said that because they signed a limited deputization, which actually says you're not a federal employee, that somehow they're not subject to section 1983. Section 1983 literally says every person, it doesn't even mention state. It says every person operating under color of a statute, a rule, a regulation, or anything that deprives someone of a right is subject to liability. We have grafted the whole state officer thing into section 1983. It does not even mention whether it's a state officer. Before you sit down, because I'm going to ask your friend over there about this, it was a final judgment. Your case was dismissed, or was it a summary judgment? I don't recall. On the first, it was a summary judgment. Okay. In part of that first appeal, the district court ruled that they were federal officers and you couldn't sue at all under 1983. Is that correct? Yes, Your Honor. That was the rule. All right. Yeah. In the first appeal, you didn't appeal that ruling. You came up just on the other part of the case, the Bivens part, and the excesses force, right? No. So what happened was... You didn't appeal. I know that... I'm going to make a separate summary for you, Jess. No problem. Okay. I'm going to mention that it was... Yeah. I know there was then an amended complaint, and I understand about all that, but you never appeal the very direct holding that they were federal officers, and I don't understand why it's not law of the case under our present. The issue on waiver and law of the case is... It's not waiver. It's law of the case. I understand. Because it was a final judgment, and you didn't appeal whether they were federal or state officers. It wasn't an issue on appeal. Nobody was challenging whether or not... Because this case hadn't come out. Edward wasn't... I know, but Edward Bivens. Edward is not 1983. Yeah. What I'm saying is, on the first appeal, nobody was challenging whether we could receive money damages against the federal officers. It was all use of force, so we didn't appeal it because it made no sense, because nobody challenged that. Nobody said, hey, on the first appeal, nobody said, hey, you Edwards out here... Well, they did on the 1983 claim, they said you can't get any money damages on 1983 because they're purely federal officers. They're not acting under federal and state, so... Yeah, but nobody... Nobody... Okay. You've said what you're answering. Nobody... Because you prevailed on... On whether we could get damages. Yeah. If we prevail on whether we could get damages against these officers, then the issue is just excessive force. I understand. We'll give you your full time for rebuttal, Mr. Williams, because you were answering the court's questions. Mm-hmm. Mr. Mendel. Good morning, ma'am. Here's the court. and today I'm here on behalf of Inspector Eric Hines and Ms. Pamela Doyle. After Egbert, courts cannot recognize of Evans' action if there's any reason to think that Congress might be better equipped to create a damages remedy. This case arises in a new context, implicates special factors, and the district court properly dismissed plaintiff's claim. The Supreme Court's understanding of a new context is broad, and Egbert tells us the legislature could think that some factual or legal difference might alter the costs and benefits of implying a cause of action. That is why, as the court said in a base, the differences that are, quote, perhaps small, at least in practical terms, are meaningful, and the new context inquiry is easily satisfied. Here plaintiff's claim arises in a new context because it involves a new category of defendants operating under a different legal mandate. The Second, Sixth, and Tenth Circuit have addressed this question directly, all found that a new context existed. Those cases are in our brief and in the three supplemental authority letters we filed in March. It's also a new context because they are operating under a judicially issued arrest warrant. And since this case arises in a new context, Egbert tells us that if there is any rational reason to think that Congress, rather than the judiciary, should decide whether to create a cause of action as their, quote, will be in most every case, no Bivens action may lie. Supreme Court didn't give us an exhausted list of special factors, but we know from Egbert that at least one of them is the existence of alternative remedial structures. Here as laid out in our brief and as adopted by the Sixth and Tenth Circuits, there are several such remedial structures, including an internal agency scheme, which can lead to criminal prosecution or civil or administrative action. Do I, do any of those remedies apply to the officers who are state and local law enforcement as opposed to marshal service? They do, Your Honor. And in both the Sixth and Tenth Circuit cases, the defendants were deputized local officers who were similarly situated to Mr. Doyle in this case. And the courts in those cases found that those grievance processes applied and prohibited or precluded. Did they address the issue? Was the issue raised there? We know as a matter of fact, they were local officers, but did they litigate the issue as to whether the administrative remedies applied to them? I don't think that that was raised by the jury, but anyway, nor was it raised by my colleague in his briefs in this case. But what the Sixth Circuit and Tenth Circuit did address is whether deputized law enforcement officers were properly sued under Bivens or under Section 1983, and both recognized along with the unanimous consensus, there's cases on pages 54 and 55 of our brief, that deputized local officers while serving on these federal task forces are doing so under color of federal law. You also, in your section of your brief where you're talking about the available remedies, you point to 31 U.S.C. section 3724, where the Department of Justice has a statutory ability to settle a case for no more than $50,000 for when there's an investigative or law enforcement officer, as defined in Section 2680H. Would that section apply to a deputized officer? It would, Your Honor, just the same way that the Federal Tort Claims Act does. So in this case, in its origins, there were, in addition to Bivens claims, there were tort claims brought under the FTCA. And the United States was substituted under the Westfall Act for all of the defendants. And so, if there had been a viable tort claim against any of the deputized officers, it would have run against the United States. So it doesn't carve out, so purposes of those tort statutes, they are considered employees under the. But, but that remedy that Judge Branch mentioned is entirely discretionary, isn't it? That's right, Your Honor, and of course, Judge Breyer, your question goes to, you know, is that enough? Is that adequate? And what the Supreme Court has told us in Egbert is those aren't questions for the, the courts to answer. We could look at these remedies and, and in the individual case or in every case, feel like it was inadequate. But what the court said in Egbert is that as long as there is a remedial process, the courts cannot second guess that calibration by superimposing a Bivens remedy. And that is true even if a court independently concludes that the government's procedures are not as effective as an individual damages remedy. And so here, in addition, of course, to the special factor of the administrative scheme, you have all of the policy implications of extending a Bivens remedy to these task forces which are operating under statute and mandate to coordinate with state and local authorities to recruit their officers to take these deputizations and as the Sixth and Tenth Circuit both recognize, expanding a remedy to those scenarios at least raise policy questions that a legislature is best suited to weigh. At oral argument in Egbert, Chief Justice Roberts asked the government to give a hypothetical where Bivens would permit a cause of action for excessive force. And the government answered that in a case involving the U.S. Marshals where there was excessive force, there would be no special factors counseling hesitation. Why just two years later has the government changed its mind? I'm not, I'm not familiar with the basis for that answer and why, why that answer was given. And certainly in all the cases since and in the second, Sixth and Tenth Circuit cases that we've cited for you, that was not the government's position and the courts agreed with us. And it's not just the Marshals. If you look at the cases in our, I think it's our third supplemental authority letter, it's also FBI agents, ICE agents, Bureau of Land Management officers, prison officials, in all of those contexts, the existence of administrative scheme has been deemed a special factor. But even if that wasn't a special factor, again, the fact that you have these joint task forces, which is not just the Marshals service, although that is the level of granularity this court has to ask is, would we extend the Bivens remedy not just to these defendants, but to all Marshals service officers? And would that decision implicate policy considerations that are better left to the legislature? And the answer is yes. I'll turn briefly to the question of whether the 1983 claims can be revived. And the answer is no. Judge Hull, as your question alluded to, they were denied or they were dismissed in March 2019, which was two years before final judgment in this case. In those two years, plaintiff never asked the district court to reconsider that decision, never presented the so-called new evidence to that court. And when final judgment was entered and an appeal was brought to this court, did not ask this court to revisit that question. Nor did she ask the court to revisit the question when it was remanded to the district court. And when we did raise these Egbert claims, this Egbert motion, she did not ask the district court to reconsider the 1983 claims. It's only before this court on the second appeal that for the first time she has suggested that she should be able to resurrect those 1983 claims. That argument is barred by law of the case and waiver since it was never presented to the district court. And it's meritless because the district court's decision was correct. Unless there are any further questions from the panel, we ask that the district court judgment be affirmed. The first thing I would like to say, Your Honor, is that as far as the internal disciplinary action and a remedy, and you asked does it apply to the state, it's a joint task force with a memorandum of understanding, and we briefed this issue. The federal government has actually said in the Usa Dilley Force case, your local agency is responsible for investigating and disciplining, and we may help in that, but your local agency is responsible. Second of all, this whole procedure, this case has had about six attorneys on it. I came on it last. That's why we ended up getting the information, because as soon as I came on it, I asked for it. And I'm not quite sure what happened before with the other attorneys, but I do know that I did file a motion for reconsideration based on these grounds about the section 1983. And it was denied, and that's also in the brief in the footnote. So the whole idea that we never raised this issue with the lower court is the first issue I raised when I decided to take the case, even though it was a tougher case because they alleged she had a gun. So that whole issue of discipline, no, the marshal service didn't even take responsibility for disciplining these officers in a Usa Dilley Force circumstance. They put that back on their local agency, like they did everything else. So the next thing I want to say is ... Let me ask you one more question before you move on. Is there any authority as to whether non-federal officials who are deputized can be disciplined under any of these procedures? No. Especially when you enter into a contractual arrangement that says no. See, that's the whole thing that ... I like him, he's a great guy. That's the whole thing that's a little ... But we don't have the documents for the Fulton County officers, so we don't actually have the contractual arrangement as to the Fulton County. We have Clayton County. Maybe I got it right, but vice versa. We have Clayton County. You're right, Your Honor. We have the Clayton County documents. Yeah, and that's Hutchins. And you're not appealing it to Hutchins. You're only appealing it to Dole, who was Fulton County. Well, Hutchins was let out. Dole? Hutchins out. So, and Clayton County is the one we've got all the contractual documents from. We don't have any of what the Fulton County contractual documents are. And I know that's not your ... You didn't do that, but that's the reality. Exactly. But there's never been a dispute in this case as to whether or not ... I just wanted to clarify, we can't really know what the contractual arrangement was. There's never been a dispute in this case that the agencies have held responsibility if a use of duty force act occurs as far as investigation and liability. There's never been a dispute in this case that not Hutchinson, not Doyle, not anybody other than Hines could even join this task force if they did not apply and obey by state law. Dole? Those are indisputable. Nobody's going to come up here and argue and say, no, that's not right. Martin is wrong. We could go be on the task force if we violate the state law that governed our actions the Nobody can dispute that each person, this limited deputization, actually says you're not a federal employee. And I did file a motion for reconsideration saying all this to the judge and he denied it. Now, there is the issue of law. The case, I've already explained our position on that. If your honors disagree, there's nothing I can do about that. But our issue was we're looking for money damages and that wasn't a question when we came up the first time. It just wasn't a question. Money damages could be had. Was there excessive force? Yes or no. And that's why I know it was brought up. And so I'd just like to conclude by saying that what is Congress, what kind of damages remedy? So we're going to base a damages remedy on whether or not someone had a warrant or not. That's the expectation of Congress being better suited to craft a damage remedy. So we're going to make a distinction whether someone had a warrant or not. And then we expect Congress to legislate that and say, hey, we're going to start trying to figure out every scenario that comes up and we're going to say there's a damage remedy for it. So if you fall outside, if you don't have a warrant, or if you do have a warrant in this case, we got to go back to Congress to legislate situations in which, no, that doesn't even make sense. Somehow, and this might not be the case to your honors, we believe it is, somebody has to be able to fit into these circumstances of executing a search and seizure warrant under the Fourth Amendment where there is a claim of excessive force. And we believe that this is that case. Thank you for your time.